Bradley J. Puetz
dba Desert Tactical
10410 Apples Eye St.
Las Vegas, NV 89131
(702) 701-2878
brad@deserttactical.com
Defendant / Counterclaimant Pro Se

Hon. Vince Chhabria
United States District Court Northern District of California
450 Golden Gate Avenue, 17th Floor
San Francisco, CA 94102

February 15, 2017

       Ref:    **Continued Discovery dispute in *Teespring, Inc. v. Puetz 3:15-cv-04149-VC***

Dear Hon. Vince Chhabria,

Bradley J. Puetz (dba "Desert Tactical"), respectfully submits this Joint Letter Brief pursuant to Fed. R. Civ. P. 16(b) and 33(a), Local Rule 37-3 and Judge Chhabria's Standing Order 15. Mr. Puetz comes before this Court again regarding Mr. Maginnis and his counsel's repetitious failing and refusal to provide proper supplemental documents responsive to this Court's Order issued on January 4, 2017. This Order instructed Maginnis' counsel to "[d]o a thorough supplemental document review of every email and document sent to or received from Teespring and Virtual Style[1] that are subject to this litigation." This is now the third Joint Letter Brief filed since December 8, 2016. The Interrogatories and Request for Production of Documents and Things was originally propounded upon Maginnis on August 11, 2016 over 6 months ago. The absurdity that Maginnis has not, and will not provide proper disclosure after two previous letter briefs is contemptible.

Counterclaimant's Statement

Third time's a charm. Puetz filed Joint Letter Briefs to this Court on December 8, 2016 [Dkt. No. 98] and again on December 21, 2016 [Dkt. No. 104]. The first letter brief resulted in an Order to Compel being issued on December, 12, 2016 [Dkt. No. 99], the second letter resulted in a Further Case Management Conference held on January 4, 2017. Maginnis was ordered to locate, review, and disclose all emails relevant to this litigation and given a timely extension to do so [Dkt. No.108]. Maginnis emailed Puetz on January 31, 2017 to notify him that the supplemental disclosure was prepared and that a CD containing said documents was being sent via FedEx overnight service. Puetz received the package containing the CD on February 1, 2017.

Puetz discovered the CD contained 7613 individual documents in pdf form, each one its own separate file requiring Puetz to select, open and close one at a time to view them. Puetz began going through the documents on the CD and determined that nearly 99% of them were irrelevant to this case. Puetz spent several hours sifting through the documents and was only able to view around 300 of them. The documents were sporadic and random with no apparent organization whatsoever. Furthermore, most of

---

[1]Virtual Style was understood to be actually ViralStyle.

the documents viewed were emails regarding things such as solicitations to buy shirts such as
"Husband Your Greatest Blessings? Then This shirt is for you :)" [Bates No. 007569], "Righteous
Violence – Check This Out" [Bates No. 2001, and "I Love My Grandkids" [Bates No. 000043][2]. The
remainder of the documents include confirmation emails from Teespring regarding the launching and
ending of campaigns, nearly all of which seem to be in reference to designs not associated with the
Maginnis Design or any of its "predecessor" designs. After further review of the documents on
February 8, 2017, Puetz felt the need to contact Mr. Levy for an explanation and a Meet and Confer
regarding the complete disarray of the documents as well as to inform him that it was overly
burdensome for Puetz to individually view each email, most of which have no relevance to this
litigation. Levy replied on February 9, 2017 that "[w]e were able to do that was to conduct the
electronic searches we disclosed to you based on identification of campaign names and phrases." Puetz
pointed out that the Maginnis was ordered to "*review*" those documents "*subject to this litigation*", not
just compile and disperse. (emphasis added). This was specifically Mr. Levy's responsibility to read and
interpret each individual document Maginnis supplied him and determine whether it has relevance or
not. Based on the contents of the document "dump", a review of such was not performed in the
slightest. This disclosure is likely less than 100 pieces of *actual* documents either relevant or even
remotely relevant to the Maginnis Design and this litigation. Puetz again attempted to meet and confer
with Levy by email on February 10, 2017 in a final attempt to resolve the situation without judicial
intervention. Puetz offered to individually discuss with Mr. Levy, every one of the 7613 emails and
their relevance, or lack thereof, to this litigation if necessary. Levy essentially replied that "[I] see only
unconstructive banter in your last email – I will not engage in that."[3]

Puetz speculates there are only three reasons one would feel thousands of irrelevant documents should
be part of the disclosure: (1) to obscure emails or documents containing pertinent information likely to
support Puetz's claims; (2) to purposefully aggravate Puetz because Maginnis was ordered to do an
extensive disclosure; and/or (3) counsel simply chose to willfully disregard the order to review the
documents prior to disclosing them to sort out the non-relevant documents.

In the disclosure collection, none of the documents were arranged in any sort of chronological order or
grouped by subject, thus amounting to digital document chaos which is completely unprofessional and
frankly disrespectful, especially in a substantial litigation such as this. Puetz concedes that some sorting
of emails and documents would be an acceptable burden to bear, but to a significantly lesser extent.
This however, is purely egregious and likely intentional in an effort to harass. Mr. Levy stated that "We
produced the emails in the order that our review platform produced them" and "we paid a vendor to
convert those files into readable .pdf files for you, bates stamped those documents at our cost and
provided them to you on a disk." Puetz suggested Mr. Levy request a refund from whomever compiled
this disclosure. Furthermore, Puetz is not responsible for the costs Maginnis incurs in this litigation
unless the court deems otherwise in the conclusion of this case and for Maginnis to suggest otherwise
is improper. Teespring, and even Puetz in his *pro se* capacity, were able to condense their disclosures
into individual, multi-page documents, making it easier for the other party to scroll through them out of
professional courtesy. Moreover, Teespring is the largest party to this action and was able to abridge
their document disclosures to around 800 pages, Puetz produced around 170, and then there's
Maginnis, the smallest litigant, producing some 7,613 documents.

---

[2]Copies of all Bates Nos. immediately available for judicial review if requested.
[3]Copies of the email exchanges between Puetz and Levy immediately available on request.

692\1441966.4

Regarding the continued lack of financial disclosures from Maginnis in connection with the Last Chance to Order campaign, there is no possibility the electronic trail of the transfer of more than $385,000 from Teespring to Maginnis does not exist. Aside from the unlikely scenario that Teespring personally delivered a large bag of cash to Maginnis, there is electronic evidence and records of these payments. The spreadsheet Maginnis previously disclosed [Bates No. MAGINNIS000039-40] was an "estimate" as explained by Levy during the Case Management Conference and is not an actual legitimate financial record. Maginnis has still not disclosed one shred of the actual financial documents Puetz requires to compile his damage claims. The request was proper, it was timely, and it is still unfulfilled.

Puetz contends that Maginnis again has failed to provide proper supplemental disclosure to his original August 11, 2016 requests, even after two previous letter briefs, an order to compel, and a further order to review and supplement from the Case Management Conference. Puetz must ask the Court, what is it going to take for Maginnis to comply? Puetz merely seeks the documents relevant to his defense and to his counter-claims, not email solicitations to purchase a shirt attesting that he loves his grandkids.

Puetz must ask to the Court to grant another order to compel and further demand that (1) Maginnis *immediately* comply with all previous orders to compel discovery, to include, doing a proper sorting, eliminating, organizing, and rectification of the document dump submitted to Puetz; (2) the Court firmly sanction Maginnis for the repetitive failures and evasion of providing Puetz with the discovery he is lawfully entitled to; (3) The Court further sanction Maginnis for causing unnecessary delays in the judicial process due to his failures; (4) any additional relief this Court finds just and equitable.

### Responsive Statement of Counterclaim Defendant Jonathan Maginnis ("Maginnis")

Maginnis has fully complied with the Court's order issued during a telephonic Case Management Conference on January 3, 2007 (the "January 3rd Order"). Puetz's complaints now merely prove what counsel represented to Mr. Puetz during the prior meet-and-confer sessions and to the court during the hearing: Mr. Maginnis is not withholding relevant documents and any mass production of communications will largely consist of automated emails that are of no interest to Mr. Puetz.

**Contrary to Puetz's Claims, Maginnis Fully Complied with the January 3rd Order in Making his Supplemental Production:** On January 3, 2007, the Court ordered that Maginnis's counsel "do a thorough supplemental document review of every email and document sent to or received from Teespring and ViralStyle that are subject to this litigation and complete the supplemental document production to Mr. Puetz by no later than 1/31/2017." Minute Entry, Dkt. No. 108 (Jan. 3, 2017). During the hearing, over counsel's objection, the Court explained that it considered all documents that reference any design iteration leading to and including the Maginnis design to be relevant. Counsel conducted a new, full "capture" of all available communications (involving Teespring or Viralstyle) which resulted in over 16,000 documents, identified each campaign associated with any iteration of the Maginnis design (by connecting the known design iterations with campaign names used by Maginnis) and loaded the raw data into counsel's in-house Summation review platform. Counsel then used search terms to locate all documents containing: (1) names (including partial names) of known campaigns related to any of the iterations of the Maginnis Design identified by Puetz in the instant action; (2) the terms "infidel" and "ISIS," and (3) any indication of "IP escalations" or "IP violations." Next, his counsel used a combination of search terms and manual inspection to review the remaining documents for attorney-client privileged material and confidential third-party material, which was either redacted

692\1441966.4

or removed and described in a privilege log that Maginnis provided to Puetz[4]. The remaining documents were produced to Puetz in their entirety to help ensure that no documents that are potentially subject to the litigation were omitted from the supplemental production (hereinafter "Supplemental Production"). Finally, while counsel would have been permitted to produce the documents in their native format, realizing Mr. Puetz is a *pro se* litigant and consistent with counsel's understanding of the Court's desire to accommodate that status, counsel then paid a vendor to translate each of the raw data documents into a universally readable format – a .pdf. This step was plainly reasonable since Puetz's own prior document requests had expressly requested that electronically stored data be "produced in a form that does not require specialized or proprietary hardware or software, i.e. .pdf format,"[5] The vendor then bates-stamped and produced the documents. Contrary to Puetz's assertions, the Supplemental Production did not contain some 7600 documents – it contained 4104 documents consisting of 7615 total pages. Thus, the lengthy and expensive process that counsel employed reduced the total production by approximately 75% from the original collection without removing even potentially relevant information.

Maginnis' counsel completed the Supplemental Production on January 31, 2017 and readied the documents for electronic delivery on a hosted site for download in addition to sending Puetz a disk containing the production by overnight mail. Following an exchange of telephone calls in the afternoon of January 31, 2017 offering the option of downloading the documents instantly on January 31, 2016, Puetz opted not to receive the documents electronically. Specifically, Puetz stated that receiving the disk the following day was "more than adequate." Confirming Email from Puetz (Jan. 31, 2007 at 6:08 PM).

**Maginnis's Process for Reviewing the Documents for Materials Relevant to this Litigation was Reasonable Under the Circumstances and Proportional to the Needs of the Case:** Puetz's complaints regarding the number of documents in Maginnis's Supplemental Production, and the purported lack of relevance of some of those documents, are unfounded. Maginnis had already produced the documents responsive to Puetz's document requests long before the January 3, 2017 Order. The January 3, 2017 Order was, by its stated purpose, designed to reach a much broader range of documents. Counsel disclosed to Puetz that such a broad order would be burdensome and that it was unlikely to yield relevant evidence; while he disagreed at the hearing, Puetz now seems to adopt both positions. The only reasonable way to accomplish the task ordered by the court – at Puetz's urging – was to employ the electronic searches, as discussed above. Unfortunately—as Maginnis explained in the cover letter sent with the Supplemental Production and reiterated during the meet and confer with Puetz—Maginnis reused some names in his campaigns to sell apparel bearing various designs. As a result, some emails that include an identified campaign name likely were referring to designs unrelated to the case. However, providing those emails (to which Puetz was plainly not entitled) was the only way of ensuring compliance with the order because there is no way to differentiate between a "Last Chance" campaign reference that refers to the Maginnis Design (or a predecessor) and one that uses the same name but referred to a different design. Under the circumstances, Maginnis's efforts were entirely reasonable and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).[6]

---

[4] The only withholding or redaction related to unrelated customer names and the like. Maginnis has no objection to an in camera review of those items should the court desire it.

[5] Puetz's First Request to Maginnis for Production of Documents and Things, at p. 6, lines 10-12 (Aug. 11, 2016).

[6] Puetz's argument that it would be unreasonable for him to identify the emails that he considers important within Maginnis's Supplemental Production is belied by his offer "to individually discuss with Mr. Levy, every one of the 7613 emails and their relevance, or lack thereof to this litigation." This, of course, would take far more time and effort than locating the material documents within the Supplemental Production.

Finally, Puetz's demands that Maginnis "sort" and "organize" the Supplemental Production lack any support in the Federal Rules. Fed. R. Civ. P. 34(b)(2)(E)(i) expressly authorizes a responding party "to produce documents as they are kept in the usual course of business." Maginnis did just that by uploading his emails with Teespring and ViralStyle to the Summation review platform, weeding out the non-responsive documents through the above-described review process, and then producing the remaining documents in the order maintained by the review platform. Specifically, the documents were not stored in any static order as data on Maginnis' server[7]. The documents were collected from Maginnis' server and placed into the Summation review platform. The platform automatically assigned an "object ID number" to each document in the order that it was processed from the server – thus maintaining the exact order in which the data was originally stored. Individual pages within a document remained grouped together as did any attachments. After the review was completed the Summation platform extracted the responsive document according to the "object ID number" order thus ensuring that the production was made in *exactly* the manner that the documents were originally stored. The only exceptions were the handful of redacted documents that received special handling.

**Maginnis has Produced All Relevant Documents Regarding the Revenue That Maginnis Received from Teespring and ViralStyle:** This Court's order did not address financial documents. Nevertheless, contrary to Puetz's claims, the Supplemental Production did also include some evidence of financial payments. The problem – which again Maginnis has previously disclosed – is that the payments cannot be tracked to a particular campaign because Maginnis lacks that information. For example there are some Paypal payment documents within the Supplemental Production, but the words in those documents give the reader no indication of whether that payment relates to a Maginnis Design or not. This is exactly consistent with the representation that Maginnis has previously, repeatedly made to Puetz: the documents in Maginnis possession, custody and control reflecting these payments do not segregate the payments associated with each of Maginnis's hundreds of T-shirt designs. The only documents that do that are the estimated payment spreadsheets already produced by Maginnis, and specific payments produced by Teespring long ago, but which are not within Maginnis' possession, custody, or control. Simply put, Maginnis cannot be compelled to produce financial documents that do not exist, notwithstanding Puetz's speculation that they do.

**Conclusion:** For all of these reasons, Maginnis has complied with the Court's January 3rd Order[8]. That Maginnis' Supplemental Production contains little if any useful information should come as no surprise to Puetz. It is precisely what Maginnis previously represented: he has already, previously disclosed the responsive documents in his possession custody and control. Maginnis therefore respectfully requests that the Court deny Puetz's motion in its entirety.

DATED: February / 5, 2016                    Respectfully submitted,

| | |
|---|---|
| Bradley J. Puetz<br>Counterclaimant<br>Pro Se | Allonn E. Levy<br>Attorney for Counterclaims Defendant's<br>Jonathan J. Maginnis |

---

[7] As disclosed to Puetz, Maginnis *does not* utilize a common Microsoft Outlook or similar email system.
[8] Puetz's Request For Sanctions is unsupported by any evidence of a violation of this Court's order and is procedurally improper. See Civil L.R. 7-2; 7-8(a), (b). As such, his request must be denied.

692\1441966.4