Bradley John Puetz
d/b/a Desert Tactical
10410 Apples Eye Street
Las Vegas, NV 89131
Tel:(702)625-3822
brad@deserttactical.com
Defendant/Counterclaimant
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEESPRING, INC.<br><br>      Plaintiff,<br><br>  v.<br><br>BRADLEY J. PUETZ,<br><br>      Defendant | Case No.: 3:15-cv-04149<br><br>**TRIAL BRIEF OF DEFENDANT AND COUNTERCLAIMS PLAINTIFF BRADLEY J. PUETZ** |
| BRADLEY J. PUETZ dba DESERT TACTICAL<br><br>      Counterclaimant,<br>  v.<br><br>TEESPRING.COM, INC., A Delaware Corporation; DOES I-X; ROE CORPORATIONS I-X, inclusive JONATHAN MAGINNIS, an individual d/b/a ClientMax Marketing; DOES I-X, ROE CORPORATIONS I-X, inclusive<br><br>      Counterdefendants | Judge:       Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor |

## I.   INTRODUCTION

This copyright infringement action was commenced by Teespring, Inc. (hereinafter as "Teespring") against Bradley J. Puetz, d/b/a Desert Tactical (Hereinafter as "Puetz") because Puetz had, on numerous occasions, notified Teespring that a user known as US Infidels, which is under the control and authority of counterclaims-defendant Jonathan J. Maginnis (hereinafter as

1  "Maginnis"), had uploaded a design (hereinafter as "Maginnis Design") to Teespring.com, which
2  is virtually identical to the federally registered copyright design of Mr. Puetz's (hereinafter as
3  "Desert Tactical Design") identified as "I'm the Infidel Allah Warned You About". Maginnis and
4  Teespring operated jointly and cooperatively in offering the Maginnis Design for sale through the
5  Teespring.com website. The Maginnis Design was promoted under the title "Last Chance to
6  Order" and was a series of multiple "campaigns" conducted on the Teespring platform from June
7  2, 2015 until September 1, 2015. On or about June 7, 2015 Puetz became aware of this activity
8  through a Facebook ad promoting the Maginnis Design for sale on various apparel items through
9  the Teespring.com website. Puetz promptly notified Teespring of the controversy and emailed
10 them the first of what would later be three cease and desist demands on June 7, 2015. Teespring
11 essentially chose to ignore the demand, as well as the two additional demands and dozens of
12 emails during the 88 days the design was being hosted and sold on Teespring.com., despite Puetz
13 threatening Teespring with legal action if they continued to engage in selling apparel bearing the
14 infringing design. Teespring willfully chose to disregard Puetz's repeated notices and warnings in
15 that the continuation of such activities could potentially be very costly.
16      Mr. Puetz received his federal copyright registration certificate bearing the number VA 1-
17 967-093 on August 31, 2015. A copy of this certificate was immediately emailed to Teespring and
18 Teespring's attorney at the time, Mr. Robert Carroll. Teespring removed the Maginnis Design
19 from Teespring.com on or about September 1, 2015. On September 11, 2015, Teespring filed it's
20 complaint against Mr. Puetz for declaratory judgment and is seeking a declaratory judgment in
21 this Court to affirm claims that the Maginnis Design does not infringe upon the Desert Tactical
22 Design and that Teespring would not be liable for such infringement despite the fact that
23 Teespring offered for sale, collected payment, printed items of apparel bearing the Maginnis
24 Design, packaged and shipped these items to it's customers, and paid Maginnis a previously
25 agreed upon percentage of the sale price for his role in the sale of such apparel. Teespring
26 accepted the risk of potential liability when, Teespring willfully and actively engaged in conduct
27 in which they had knowledge that such activities may be potentially infringing upon Desert
28 Tactical's copyright, Maginnis holds no valid copyright to the design he uploaded to Teespring,

because Desert Tactical's cease and desist demands were accurate and sent in good faith, and Teespring, at no time, discontinued sales of the Maginnis Design to investigate the infringement claims of Mr. Puetz.

## II. STATEMENT OF FACTS

### A. Teespring

Teespring is engaged in the business of printing and selling apparel, mainly t-shirts and similar type apparel, with a variety of designs uploaded by its customers, known as "users", online on their exclusive website, www.Teespring.com. Teespring additionally provides proprietary design utilities and other editing tools including creative applications for it's users to design and/or upload designs intended to be printed on various apparel items. Users then set some basic parameters such as price, types of apparel, colors, and quantity to be sold to begin a sales "campaign" on Teespring. Users are encouraged to upload images that are intended to be sold to customers, then Teespring prints the user uploaded design on apparel and the product is shipped to customers. Teespring will produce apparel bearing designs the users upload, regardless if the user is the lawful owner of the design or not. These designs are sent live to Teespring.com and immediately offered for sale to the public without any type of effective screening process.

Teespring directly prints apparel with the user uploaded designs in their in-house print facility in Hebron, KY. Teespring also collects payment and then ships the items to it's customers. When a campaign is successful, Teespring and the user will then divide the earnings based upon a per garment "profit", with Teespring retaining a set amount of the sale and the user taking a set amount agreed upon when the campaign is initialized. Teespring incorporates the costs of production into its portion of the price and does not directly disclose its actual profits to the user, i.e. Teespring will display a cost to the user of $12.95 to print the shirt, the user then may set the sale price to whatever he wishes, for example $22.95, and for each sale the user will profit $10 but Teespring does not indicate to the user what their costs for the blank garment, printing, labor, etc. are. Both Teespring and the user gain financially from successful campaigns, including those which may contain designs lawfully owned by entities other than the user who uploads them or Teespring. Teespring has ultimate control over each and every design offered for sale on it's

website, as well as full control over whom may and may not use the website. Furthermore, the actual sale of these items is immaterial to the extent that merely publishing items bearing designs without the lawful owner's permission constitutes infringement and Teespring continuously neglected to individually inspect all uploaded designs and campaigns demonstrated a willful intent to actively participate in copyright and trademark infringement with its users.

    **B.**    **The Desert Tactical Design**

Mr. Puetz created the Desert Tactical Design known as "I'm the Infidel Allah Warned You About" in December of 2014 with a completion and publication date of December 2014. Puetz immediately began using the the design, either whole or in part, as a primary company logo for Desert Tactical and additionally as the primary web site logo (deserttactical.com), invoice logos, gift certificate logo, and other similar placements where a business logo would be used. Puetz began producing apparel with the Desert Tactical Design around mid-February of 2015.

The Desert Tactical Design is depicted below and bears valid U.S. copyright registration number VA 1-967-093:



    **C.**    **The Maginnis Design**

The following image represents the Maginnis Design that Puetz contends is infringing upon the copyrighted Desert Tactical Design, with a creation date of June 2, 2015 and is marked as JM-00015. [Gray Decl. Exh. A p. 37]



The exact distinct elements that make the Desert Tactical Design unique are all present in the Maginnis Design. Furthermore, the Maginnis Design does not incorporate a single unique element not found in the Desert Tactical Design, nor does it omit any of the unique elements of the Desert Tactical Design.  The speculation as to that the culmination of previous designs contributed to the creation of the Maginnis Design is far-fetched to the extent that there are no shared design elements contained in any of the "predecessor designs" to the Maginnis Design, except for the Arabic script in one version.

### III.    LEGAL DISCUSSION

In order for Puetz to prevail on his claims that Teespring and Maginnis infringed upon his copyright, Puetz bears the burden to prove (1) ownership of the copyright; and (2) that Maginnis copied it. *Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 481 (9th Cir. 2000). The substantial similarity between the Desert Tactical design and the Maginnis design sold on Teespring is undeniable. Mr. Puetz has provided Teespring with his federally registered copyright certificate as *prima facie* evidence of ownership to the Desert Tactical Design. [Dkt. No. 8 Exh. 2].

1    In order for Puetz to prevail on his claims of vicarious copyright infringement, Puetz bears
2 the burden to prove that (1) The Maginnis Design infringes upon the Desert Tactical Design; (2)
3 Teespring had the ultimate right and ability to stop or limit the infringement; and (3) Teespring
4 financially profited from the Maginnis infringment. *Perfect 10, Inc. v. Amazon. com, Inc.*, 508 F.
5 3D 1146, 1173 (9th Cir. 2007) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545
6 U.S. 913, 930 (S.Ct. 2005).

7    **A.    Access to the Desert Tactical Design**

8    "Because of the inherent difficulty in obtaining direct evidence of copying, it is
9 usually proved by circumstantial evidence of access to the copyrighted work and substantial
10 similarities as to protectable material in the two works." *Reyher v. Children's Television
11 Workshop*, 533 F.2d 87, 90 (2d Cir.1976). Puetz bears the burden to prove that Maginnis had
12 "reasonable opportunity" or "reasonable possibility" of viewing the Desert Tactical Design. "Of
13 course, reasonable opportunity as here used, does not encompass any bare possibility in the sense
14 that anything is possible. Access may not be inferred through mere speculation or conjecture.
15 There must be a reasonable possibility of viewing the plaintiff's work—not a bare possibility" 4
16 Nimmer, *Nimmer on Copyright* §13.02[A] at 13-19. "At times, distinguishing a `bare' possibility
17 from a `reasonable' possibility will present a close question." *Id.* At 20. This is established by (1)
18 a particular chain of events is established between the two works; and (2) the Desert Tactical
19 Design has been widely disseminated. *Id.* at 21. *Three Boys Music v. Bolton*, 212 F.3d 477,482
20 (9th Cir. 2009). Currently, Puetz and US Infidels share eight common Facebook friends. Desert
21 Tactical has 1,171 fans and US Infidels has 143,720 fans. Puetz cannot ascertain how may fans
22 Desert Tactical and US Infidels have in common because of privacy blocks Maginnis has in
23 place. This is current as of April 10, 2017. Even one friend in common between Puetz or Desert
24 Tactical and US Infidels establishes a "reasonable possibility" of access to the Desert Tactical
25 Design. Furthermore, Puetz cannot establish the direct link between Maginnis and the Desert
26 Tactical Design because  Maginnis' US Infidels Facebook fan page has been scrubbed entirely of
27 any evidence of the Maginnis Design including advertising, Teespring links, and customers who
28 posted pictures of the design to his page making it nearly impossible to establish a direct link

between Puetz and Maginnis through the most likely forum. The US Infidels fan page likely deleted any common fans that may have posted images of the Desert Tactical Design.

### B. Striking Similarity as Evidence of Access

Absent of the reasonable possibility of access, in the alternative Mr. Puetz can demonstrate the Desert Tactical Design and Maginnis Design are "strikingly similar." When a striking similarity exists between two works, it's permissible to imply the infringer had access to the copied work. *Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987). *UNICOLORS, INC. v. Urban Outfitters, Inc.*, No. 15-55507 (9th Cir. Apr. 3, 2017). Striking similarity means that the two works are so similar that it is virtually impossible that the two works could have been independently created. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984); *Briggs v. Blomkamp*, 70 F. Supp.3d 1155, 1167 (N.D. Cal. 2014); 4 Nimmer on Copyright § 13.02 (2015).  Puetz contend the two works are virtually identical in that both contain the following elements: (a) An image of a  human skull facing directly forward with a lowered brow and narrowed eye sockets to give the impression that the skull is angered or somewhat menacing in appearance. The skull is white in color and includes lines and shapes to show texture, shading and depth of the eye sockets; (b) an American flag worn as a bandana covering the nose and mouth of the skull. The flag is oriented in traditional form with the field of stars on the left. The flag has an appearance of being slightly wrinkled and contoured around the face. The flag is depicted in proper Red, white, and blue colors; (c) The Arabic word "infidel" depicted on the forehead portion of the skull. The Arabic writing is depicted in the informal script form; and, (d) The phrase "I'M THE INFIDEL ALLAH WARNED YOU ABOUT" depicted in all capital letters and has a distressed or weathered appearance. The words I'M THE INFIDEL are arched over the top portion of the skull and ALLAH WARNED YOU ABOUT arched underneath the skull.

Not only are all the individual elements present in both designs, the overall expression and feel is also the same. The skull appears dark and ominous with a menacing look. The bandana expresses the protection of America and identifies the wearer as a patriot ready for battle. The Arabic script "Infidel" expresses the rejection of the Islamic faith and it's beliefs and it's placement on the skull conveys that the wearer will defend this principle to the death. The Phrase

1  "I'M THE INFIDEL ALLAH WARNED YOU ABOUT" expression is bold and it's message is of

2  strength and a warrior mentality.

### IV.  Teespring is Accountable to Puetz for Direct Copyright Infringement and Vicarious Copyright Infringement

#### A.  Teespring Directly Infringes the Desert Tactical Copyright

Puetz incorporates the statements in the aforementioned paragraphs as to his possession of a valid copyright. Teespring commits direct infringement because the two standard requirements are met (1) Puetz has sufficiently shown ownership of the Desert Tactical Design; and (2) Teespring violates the rights of Desert Tactical's copyright under 17 U.S.C. §106(a) and 17 U.S.C. §501(a). *A & M RECORDS, INC. v. Napster, Inc.*, 239 F. 3d 1004, 1014 (9th Cir. 2001).

Teespring also commits direct copyright infringement by publishing images of the design in controversy regardless if the items bearing such image are sold. In the case of Teespring.com, "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement" *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021(9th Cir.2001).

#### B.  Teespring Vicariously Infringes Upon the Desert Tactical Copyright

To prevail on a vicarious copyright infringement claim, Puetz must first prove Teespring directly profited from direct infringement by a third party while declining to excersise a right to stop or limit it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 US 913, 930 (SC 2005) citing *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F. 2d 304, 307 (CA2 1963). In this instance, Maginnis uploaded the Maginnis Design to Teespring with the intent to offer items for sale and Teespring had ultimate control to remove content and failed to do so.

Teespring commits vicarious infringement because Teespring has pervasive participation in the infringement by (1) providing uploading, editing, and design tools; (2) creating an audience for such instances of infringement to occur; (3) promotes its website in which infringers participate; and (4) Teespring has the absolute ability and authority to control what the user uploads to the website prior to offering it for sale. Teespring has and maintains ultimate control as to what is offered for sale and who has permission to do so on their site and bears the

responsibilty to police what is uploaded prior to designs being published or offered for sale, whether they choose to exercise this control or not. The ability for Teespring to block or ban users who infringe on copyrights or trademarks is conclusive evidence of the right and ability to supervise and control.

## V. BIFURCATION OF TRIAL IS NOT IN THE INTEREST OF JUSTICE

Bifurcation of trial does not serve the interest of justice and would likely prolong trial, expenses, and create delay. Bifurcation is unnecessary as it only serves the interest of Teespring to distance itself from Maginnis who potentially carries a significantly higher damages claim. Teespring and Maginnis acted jointly and in concert and privity in their infringement of the Desert Tactical Design, therefore they can stand together at trial. A reasonable jury is capable of hearing arguments on both liability and damages in copyright litigation, in this instance Puetz is not seeking overly complex forms of damages that could potentially overburden a jury.

## V. CONCLUSION

Mr. Puetz has provided indisputable evidence that he owns a valid copyright to the Desert Tactical Design that the Maginnis Design directly infringes upon. Puetz has established Maginnis has reasonable probability of access to the Desert Tactical Design. Puetz has proven Teespring directly profited from the actions of Maginnis and failed to exercise control to mitigate their liability. Teespring and Maginnis should be held accountable to Puetz for their direct infringement and vicarious infringement of the Desert Tactical Design copyright and Puetz's exclusive rights thereof.

DATED: April 19, 2016

/s/ Bradley J. Puetz  
Bradley J. Puetz  
Desert Tactical  
10410 Apples Eye St.  
Las Vegas, NV 89131  
(702) 701-2878  
Brad@deserttactical.com  
Defendant Pro Se

# CERTIFICATE OF SERVICE

*\*Use this form to show that a paper or document (other than a complaint) was served (sent or delivered) to an opposing party in accordance with Federal Rule of Civil Procedure 5. A different form is needed to serve a complaint under Federal Rule of Civil Procedure 4.\**

**Case name**:   TEESPRING, INC. v. PUETZ

**Case number**:   3:15-cv-04149-VC

**What document was served?**

   Title(s): TRIAL BRIEF OF BRADLEY J. PUETZ

**How was the document served?** *(Check one.)*
   X   Electronic delivery (email)
   ☐   Sent by fax
   ☐   Hand-delivered
   ☐   Sent by delivery service (e.g., FedEx or UPS)

**To whom was the document sent?** *(Write the full name, address, and fax number of everyone who was sent the document. Usually, they will be the lawyers for the opposing parties.)*

   Naomi Jane Gray
   Shades of Gray Law Group
   548 Market St #18014
   San Francisco, CA 94014

**When were the documents served?** *(When were they mailed, faxed, or delivered?)*

   Date: APRIL 19, 2017

**Who served the documents?** *(Who put it into the mail, faxed it, hand-delivered it, or sent it by delivery service? That person should print his/her name and address and sign below.)*

   I declare under penalty of perjury under the laws of the United States of America that the information in this certificate of service is true and correct.

   Signature:   /s/ Bradley J. Puetz

   Printed name:   BRADLEY JOHN PUETZ
   Address:        10410 APPLES EYE ST
                   LAS VEGAS, NV 89131