Bradley John Puetz
d/b/a Desert Tactical
10410 Apples Eye Street
Las Vegas, NV 89131
Tel:(702)625-3822
brad@deserttactical.com
Defendant/Counterclaimant
Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEESPRING, INC. <br><br> Plaintiff, <br><br> v. <br><br> BRADLEY J. PUETZ, <br><br> Defendant <br><br>――― <br><br> BRADLEY J. PUETZ d/b/a DESERT TACTICAL <br><br> Counterclaimant, <br> v. <br><br> TEESPRING, INC., A Delaware Corporation; DOES I-X; ROE CORPORATIONS I-X, inclusive <br> JONATHAN MAGINNIS, an individual d/b/a ClientMax Marketing; DOES I-X, ROE CORPORATIONS I-X, inclusive <br><br> Counterdefendants | Case No.: 3:15-cv-04149-VC <br><br><br> **NOTICE OF MOTION; MEMORANUDUM IN SUPPORT OF BRADLEY J. PUETZ'S REQUEST FOR RELIEF FROM JUDGMENT AND REQUEST FOR EVIDENTIARY HEARING** <br><br><br> Judge: Hon. Vince Chhabria <br> Courtroom: 4, 17th Floor <br> Date: June 28, 2018 <br> Time: 10:00 a.m. <br><br> **ORAL ARGUMENTS REQUESTED** |

PLEASE TAKE NOTICE THAT on June 28, 2018 at 10:00 A.M., before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102. Defendant / Counter-claims Plaintiff Bradley J. Puetz d/b/a Desert Tactical will and herby moves for an order in his favor for additional equitable relief from the judgment entered in the above-captioned matter on May 19, 2017 in the form of reallocation of damages liabilities and

1  any other just and equitable relief against Counter-claims Defendant Teespring, Inc. and the
2  continuous inability to control the content of the Teespring platform thereof. Mr. Puetz
3  (hereinafter as "Puetz") additonally seeks permanent injunction barring Teespring, Inc. from any
4  future use of the Maginnis Design specifically related to this litigation and any other substantially
5  similar forms thereof which may be deemed infringing upon the Desert Tactical Design copyright.
6  This Motion is made pursuant to Fed. R. Civ. P. 60(b)(2)(5), Rule 65(d), and Local Rule 7-2.
7       This Motion is supported by the Declaration of Bradley J. Puetz attached hereto. This
8  Motion is further supported by all the documents previously and concurrently filed with this
9  motion, the pleadings, any other declarations on file, the records and papers on file in this action,
10 the jury verdict, as well as any other evidence that may be introduced.

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.     INTRODUCTION ..................................................................................................................1

II.    PROCEDURAL HISTORY ……………………………………………………………….…..2

II.    ISSUES TO BE DECIDED ........................................................................................…8

III.   ARGUMENT ..........................................................................................................................9

     A.    The Judgment is No Longer Equitable and Warrants Relief …………………...…..9

     B.    The Standard Set Forth in *Rufo* …..………………………………………………..10

          1.    Puetz Meets his Burden of New Facts
                Under the First Prong of *Rufo* ..……………………………………..10

          2.    Puetz Meets his Burden of Onerous, Unworkable,
                and Detrimental to the Public Interest Under the
                Second Prong of *Rufo* ………………………………………………12

V.    CONCLUSION .....................................................................................................................13

**TABLE OF AUTHORITIES**

CASES                                                                                                           PAGE

*Ackermann v. United States*,
    340 U.S. 193, 71 S. Ct. 209, 95 L. Ed. 207 (1950)……………………………………...9

*Agostini v. Felton*,
    521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)………………....…………….9, 10

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240, 1255 (3rd Cir. 1983)

*Bellevue Manor Assoc. v. United States*,
    165 F.3d 1249 (9th Cir.1999)……………………………………………………………….10

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    224 F.Supp.3d 957 (C.D. Cal. 2016)……………………………………………………...13

*Horne v. Flores,*
    57 U.S. 433, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009)…………………………………...10

*Lawlor v. National Screen Serv. Corp.*,
    349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) ………………………………………...9

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)…..……………………………10, 11

*San Remo Hotel, LP v. City and County of San Francisco*,
    545 U.S. 323, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005)………………………………….9

*Southern Pacific R. Co. v. United States*,
    168 U.S. 1, 18 S. Ct. 18, 42 L. Ed. 355 (1897)……………………………………………..9

*United States v. Asarco, Inc.*,
    430 F.3d 972 (9th Cir. 2005)……………………………………………………………..10, 11

*Warner Bros. Entm't, Inc. v. WTV Sys.*,
    824 F.Supp.2d 1003 (C.D. Cal. 2011)……………………………………………………13

## **STATUTES**

17 U.S.C. §504(1)(2)..................................................................................................................9

17 U.S.C. §506(a)(1)(C) ..…………………………………………………………………..…13

18 U.S.C. §2319(d).……………………………………………..………………….…..13

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Once again Puetz comes before this Court seeking relief from Teespring's incessant infringement of the Desert Tactical Design and the copyright affixed thereto. This copyright infringement action (hereinafter as the "California Action") was originally commenced by Teespring, Inc. (hereinafter as "Teespring") on September 11, 2015 against Bradley J. Puetz, d/b/a Desert Tactical (hereinafter as "Puetz") because Puetz had asserted that Counter-claims Defendant Jonathan J. Maginnis (hereinafter as "Maginnis"), had uploaded a design (hereinafter as "Maginnis Design") to teespring.com, infringing upon Puetz's registered copyright design (hereinafter as "Desert Tactical Design") identified as "I'm the Infidel Allah Warned You About". Maginnis and Teespring operated jointly and cooperatively in offering the Maginnis Design for sale through the Teespring platform. The Maginnis Design was promoted under the title "Last Chance to Order" and was a series of multiple "campaigns" conducted on the Teespring platform from June 2, 2015 until September 1, 2015 accumulating $695,455 in gross revenue in just 91 days.

Jury trial in this action commenced in San Francisco, CA on May 8, 2017 and concluded on May 9, 2017 with the jury reaching the following unanimous decision: 1) the Maginnis Design directly infringed upon the copyrighted Desert Tactical Design; 2) Teespring vicariously infringed upon the copyrighted Desert Tactical Design; 3) Mr. Maginnis' profits attributable to the infringement are $383,343.23; and, 4) Teespring's profits attributable to the infringement are $51,938.60. This Court entered judgment in the above-captioned matter consistent with the jury verdict on May 19, 2018 [Dkt. No. 188]. Neither Teespring or Maginnis appealed the verdict.

The Court denied Puetz's request for permanent injunction filed in his post-trial motion for interest and other available remedies, [Dkt No. 190] citing that Teespring, with its purported automated screening system, "appears to have done a relatively good job". [Dkt No. 205]. During the course of the approximately twenty-one-month California Action, Puetz was forced to notify Teespring on no fewer than six separate occasions where Puetz had discovered the *identical* design in contention still being offered for sale on the Teespring platform. However, the Court

declined to issue preliminary injunction or permanent injunction against Teespring in belief of Teespring's deceptive argument that Teespring did in fact have content screening software in place and that this software was purportedly effective in preventing and removing designs which may be infringing upon intellectual property owner's rights. The current evidence firmly controverts Teespring's assertions of an effective "filter system" on the Teespring platform.

## II.  PROCEDURAL HISTORY

Nearly a year after the entry of judgment in this action, it's quite evident that the Teespring content screening process is a complete failure and that Teespring has no intention of screening the content uploaded to the Teespring platform. Puetz initially discovered that Teespring engaged in at least three separate sales campaigns involving known copyright infringing versions of the Desert Tactical Design between the period of June 2017 and September 2017, immediately following the conclusion of the litigation between the parties. Teespring was only able to keep its hand out of the proverbial cookie jar for a mere 24 days after the entry of judgment. Upon information and belief, Maginnis is not likely involved with the additional infringements discovered on the Teespring platform and Puetz seeks to exclude him from this motion unless there is evidence to controvert that assumption.

On June 14, 2017, Puetz became aware that Teespring was again engaging in advertising, manufacturing, and selling apparel emblazoned with a substantially similar design directly infringing upon the copyrighted Desert Tactical Design. Puetz became aware of the activity via a simple search of the words "Allah warned" on teespring.com. The search result produced the campaign bearing the infringing design. Teespring's counsel of record, Naomi Jane Gray (hereinafter as "Gray") was notified via email of the infringing campaign on June 14, 2017. Teespring removed the campaign from the Teespring platform within 24 hours of the notification.

On July 11, 2017, Plaintiff again searched teespring.com with the term "Allah warned" which again returned an active campaign engaging in the sales of the Maginnis Design identical to the design contended in the prior action. On June 11th, 2017, Puetz emailed Gray notifying her that another campaign on teespring.com was again infringing on the Desert Tactical design. Puetz

received no reply. On July 12, 2017, Puetz directly emailed Teespring's legal department another formal Final Cease and Desist letter indicating that Teespring was not entitled to further notice of designs infringing upon the Desert Tactical Design being offered on the Teespring platform and that litigation would commence if Teespring continued to offer the Maginnis Design, or substantially similar versions thereof. Teespring removed the design from the Teespring platform within 48 hours of the notice being emailed.

On September 9, 2017, Puetz again did a search query on the Teespring platform which returned yet another active campaign titled "I'm the Infidel" with a design infringing upon the Plaintiff's copyright. On September 10, 2017, Puetz had an associate place an order on Teespring for a men's Hanes Tagless t-shirt bearing the infringing design. Teespring then proceeded to print the shirt, package, and ship the t-shirt to Puetz's associate in Las Vegas, Nevada. Teespring subsequently billed Puetz's associate $35.97 for the t-shirt. On September 14, 2017, Puetz received the t-shirt from Teespring at an address in Las Vegas, NV. This constitutes irrefutable evidence that Teespring lacks any desire to control the content uploaded and offered for sale on the Teespring platform. Teespring has continuously demonstrated that it adheres to the policy that "it's better to ask forgiveness than to ask permission."

Puetz filed a Complaint before the U.S. District Court for the District of Nevada on September 28, 2017 against Teespring, Inc for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement (hereinafter as the "Nevada Action"). [Case No 2:17-cv-02519-MMD-GWF]. Since Puetz filed his Complaint, Teespring has continued to willfully engage in publishing, manufacturing, offering for sale, printing, collecting payments, and shipping items emblazoned with the infringing versions of the Desert Tactical Design without remorse. In the period from September 28, 2017 until January 10, 2018, Teespring has engaged in *fourteen additional* individual and separate campaigns offering the infringing versions of the Desert Tactical Design, the majority of which included the Maginnis Design.

On October 23, 2017, Puetz did a basic word search for campaigns containing "I'm the Infidel" on teespring.com. The search resulted in multiple hits returning three separate campaigns offering for sale the infringing version of the Desert Tactical design. Those campaign ID's end in

7275, 2114, and 4347. [Copies attached hereto as Declaration of Bradley J. Puetz (hereinafter as Puetz Decl.), Exh. 1]. Mr. Puetz chose to not immediately notify Teespring of the infringements in a good faith effort to determine if Teespring was in fact able and, at least attempting to control the content offered for sale on teespring.com. Teespring has previously assured this Court and Puetz that it has systems and screening software in place to identify and remove infringing campaigns from the Teespring platform. Given the history of Teespring, Puetz was highly skeptical Teespring would remove campaigns on their own accord, and ultimately Puetz was correct in his assumption that Teespring would not remove a campaign without notice from Puetz. Despite Teespring having full knowledge such campaigns were directly infringing upon the Desert Tactical copyright, Teespring continued with the status quo infringements.

Puetz performed a subsequent search on November 7, 2017 which returned the original three campaigns identified in October, which were still active, as well as three additional active campaigns bearing the unique Teespring ID's ending in 1714, 6037 and 6545. [Puetz Decl. Exh. 2]. Since Teespring had failed on its own to remove the campaigns, Mr. Puetz sent an email noticing counsel of record in the Nevada Action, Mr. Michael McCue, of the continued infringements, along with screen shots of the active campaigns. Mr. McCue forwarded the email to Gray. On November 10, 2017 Puetz received an email response from Gray, she conveyed that Teespring had removed the campaigns that Puetz had identified and that it was Puetz's obligation to notify Teespring of such infringing campaigns each and every time pursuant to the Digital Millennium Copyright Act (herein after as "DMCA"). This is grossly misconstrued by Gray. While the DMCA does in fact require intellectual property owners to notify infringers, it does *not* require notification of the same infringer multiple times. Teespring was officially put on notice on June 6, 2015 when the very first cease and desist email was sent prior to the action in this Court. Moreover, if Teespring contends that it's entitled to notification of each instance of infringement on the Teespring platform, Teespring then concedes that each individual campaign shall be considered a separate infringement of the Desert Tactical copyright and would be subject to statutory damages individually. Pursuant to 17 U.S.C. §512(3)(C) the language of the DMCA provides that notice must be written and concise. Teespring, upon receipt of written notice by

1  Puetz, was able to identify the infringing campaigns and terminate those campaigns. Teespring's
2  actions in terminating those campaigns essentially acknowledges that Teespring did in fact have
3  knowledge, or should have had knowledge, of the infringements thereafter and that subsequent
4  notice was not necessary. Furthermore, the jury verdict against Teespring for the identical
5  infringement should serve as indisputable notice of the infringements.
6       The very next day on November 8, 2017 Puetz again searched the Teespring site for
7  infringing campaigns and returned yet another active campaign offering the same infringing
8  design for sale bearing Teespring ID number ending in 0561. Puetz chose to not contact Teespring
9  assuming they would search their site and discover the additional campaign at the time they were
10 to terminate the campaigns Puetz previously identified in his email to Teespring. Again, Teespring
11 fails to control the content of the Teespring platform. Not only did Teespring fail to remove this
12 campaign, it remained active for over _seventy_ consecutive days. Puetz captured screenshots of the
13 active campaigns on the Teespring platform on November 8, 2017, December 6, 2017, December
14 28, 2017, and January 10, 2018.
15       On January 10, 2018 Mr. Puetz again searched the Teespring website with the search terms
16 "I'm the infidel", the search returned _six additional_, unique campaigns offering for sale items
17 emblazoned with infringing versions of the Desert Tactical Design. These campaign ID's end in
18 3201, 5040, 5599, 0286, "infede", and "allah". Campaign ID 0561 was also still actively
19 soliciting orders. [Puetz Decl. Exh. 3]. Based on the lack of action related to terminating
20 campaign ID 0561 that had been active since on or about November 8, 2017, Puetz was forced to
21 again notify Teespring's counsel of the infringing campaigns and included screenshots and
22 campaigns ID's in the email. Teespring eventually terminated all the campaigns Puetz identified
23 in his email.
24       On February 15, 2018 Puetz again visited the Teespring platform to perform a basic search
25 for infringing campaigns. Once again Teespring had its hand in the cookie jar and Puetz identified
26 campaign offering for sale the Maginnis Design and bearing Teespring ID ending in ah-wa-61.
27 [Puetz Decl. Exh. 4]. Puetz did not notify Teespring in order to ascertain if Teespring may take the
28

1 campaign down on its own accord. Puetz visited the Teespring platform on February 23, 2018,
2 and March 4, 2018 and the wa-61 campaign was still active.
3       On March 15, 2018 Puetz returned to the Teespring platform to check the status of the wa-
4 61 campaign and do another search. The basic word search on the Teespring platform returned the
5 still active wa-61 campaign as well as a new campaign offering for sale the Maginnis Design and
6 bearing Teespring ID ending in 3699. [Puetz Decl. Exh 5].
7       On March 26, 2018 Puetz conducted yet another search on the Teespring platform that
8 returned the two previously identified campaigns wa-61 and 3699 as well as another new
9 campaign offering the Maginnis Design for sale and bearing the Teespring ID ending in 7413.
10 [Puetz Decl. Exh. 6].
11       On May 11, 2018 Puetz again performed a basic word search on the Teespring platform
12 and returned the three previously identified campaigns still actively soliciting sales for apparel
13 emblazoned with the Maginnis Design. Puetz determined Teespring would not terminate any
14 campaigns on their own accord, even though they have the ultimate responsibility to do so. Puetz
15 emailed Teespring's counsel on May 11, 2018 identifying the three additional infringing
16 campaigns that had been active for months and that again Teespring failed to exercise due
17 diligence by not policing its website even once to identify and remove infringing material well
18 known to Teespring. As of May 18, 2018, the campaign with the ID ending in 3699 remains active
19 on Teespring despite Teespring receiving notice from Puetz.
20       Between entry of judgment on May 19, 2017 and May 11, 2018, Teespring has
21 cooperatively engaged in *sixteen* individual, unique campaigns to solicit sales for the Maginnis
22 Design, and substantially similar versions, infringing upon the Desert Tactical Design on the
23 Teespring platform. Teespring has undeniably demonstrated an ongoing and blatant disregard for
24 the copyright held by Puetz and the exclusive rights thereto. Moreover, Teespring consistently
25 failed to terminate a single campaign of their own accord even after Puetz gave them more than
26 reasonable opportunity to do so.
27       When Puetz discovered the additional campaigns on the Teespring platform after the
28 commencement of the Nevada Action, during the period from late September 2017 until January

of 2018, Puetz gave Teespring more than reasonable opportunity to extinguish the multiple campaigns on the Teespring platform actively selling the Maginnis Design. Puetz afforded Teespring ample opportunity on multiple occasions to intercept and remove at least one infringing campaign uploaded to the Teespring platform. After such time Puetz concluded that Teespring was not ever going to police its website for campaigns knowingly infringing upon the Desert Tactical Design without direct and firm intervention of the court.

On January 12, 2018 Puetz filed a Motion for Preliminary Injunction and Temporary Restraining Order in the Nevada Action seeking firm intervention of the court to stop Teespring's relentless and unabated infringements of the Desert Tactical Design. On May 12, 2018 the court in the Nevada Action returned its order again denying Puetz's motion and affirming Teespring's improper arguments of *res judicata* citing Puetz was barred from further action because the claims originated from the same nucleus of transactions. Puetz vehemently disagrees with the court's order and immediately filed a Motion to Reconsider. The Nevada Court also stated in its Order that Puetz's recourse against Teespring is in San Francisco in the Court which held the original action. [Puetz Decl. Exh. 7]. Puetz agrees in part and disagrees in part. Puetz concedes that if the Teespring users identified in the Nevada Action are the _exact_ same as the users conducting campaigns during the California Action, then this Court would have proper jurisdiction. Puetz also contends that if the Teespring users are unique and were not present in any form during the California Action, then the Nevada Court is just and proper for Puetz's new claims arising after the entry of judgment in the California Action and *res judicata* should not be applicable. Teespring attempts to assert that the doctrine of *res judicata* grants them immunity to some degree for future infringements of the Desert Tactical Design. This argument is inconsistent with justice to the extent that Teespring seeks to limit or bar Puetz from being able to exercise his exclusive rights to the copyrighted Desert Tactical Design and the protection thereof.

Based on the facts of this case, the Nevada Action, and the evidence presented to this Court in support of this Motion, it's abundantly clear that Teespring demonstrates a continuing willful disregard for the law, Mr. Puetz, and his intellectual property rights. Teespring's infringement of the Desert Tactical Design is unrelenting in nature despite having full knowledge

that Puetz is the exclusive copyright holder to the Desert Tactical design, and that strikingly similar versions of the Desert Tactical Design additionally infringe upon said copyright. Teespring ultimately has the indisputable right and ability to control the content of every campaign offered for sale on the Teespring platform yet refuses to exercise such rights without being directed to do so. Teespring is clearly unwilling to actively desist users from engaging in infringing activity without prompting from intellectual property owners, despite having direct knowledge of the infringement. Teespring has not removed one single campaign infringing upon the Desert Tactical Design without first being prompted by Puetz to do so. Teespring's actions, or lack thereof, are wholly egregious and require direct and firm intervention by this Court.

### III.   ISSUES TO BE DECIDED

Due to extraordinary circumstances Puetz respectfully asks this Court to grant relief from the judgement as entered against Teespring, Inc. pursuant to Fed. R. Civ. P. 60(b)(5) to the extent that the judgment in this matter is no longer equitable in that Teespring is unrelenting in its infringement of the Desert Tactical Design and the copyright attached thereto.

Issues for this Court to Consider:

1. Are the campaigns and unidentified Teespring users significant new facts in this case discovered since the entry of judgment?

2. Did the judgement serve as a deterrent for Teespring to discontinue the infringement of the Desert Tactical Design?

3. Is the judgment still equitable based on Teespring's continued infringement of the Desert Tactical Design despite the judgment against them?

4. Is permanent injunction now proper that irreparable harm has occurred?

5. Should this Court hold Teespring accountable to Puetz for each instance of infringement of the Desert Tactical Design occurring on the Teespring platform since entry of judgment?

6. Should this Court award proper statutory damages to Puetz for each instance of infringement of the Desert Tactical Design occurring on the Teespring platform since entry of judgment?

7. Should Teespring be ordered to discontinue operations until such time it's able to satisfy to the Court that it can properly police and control the content offered for sale on the Teespring platform without constant intervention by Puetz?

8. Is Teespring's continued infringement of the Desert Tactical Design protected by the doctrine of *res judicata*?

9. Should this Court consolidate this action and the Nevada Action?

## IV.  THE ARGUMENT

Finality in litigation has particular importance in our system of justice. *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 18 S. Ct. 18, 42 L. Ed. 355 (1897). It "secure[s] the peace and repose of society" by settling disputes between parties. *Id*. Once a court renders a judgment, it is final and binding on all parties. *San Remo Hotel, LP v. City and County of San Francisco*, 545 U.S. 323, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005). In fact, the doctrine of claim preclusion, or *res judicata*, prohibits the parties and their privies from raising, in future suits, issues actually litigated as well as issues that were not litigated but have a close relationship with the original claim. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327-328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); see also *S. Pac. R.R. Co.*, 168 at 48-49. However, two suits that arise from essentially the same course of conduct, in this case copyright infringement being an abatable nuisance, may frequently give rise to more than one action and is not barred by the doctrine of *res judicata*. *Id* at 327-328. Teespring has ultimate right and ability to control the content users upload to the Teespring platform (abatable). Also, Teespring's relentless infringements of the Desert Tactical Design constitutes a nuisance to Puetz as well as the courts to which Puetz must seek necessary remedies.

Fed. R. Civ. P. 60(b) allows cases to be re-opened under certain circumstances, specifically Rule 60(b)(5) offers a party relief from a judgment by motion when it is "inequitable

to permit a judgment to stand." *Ackermann v. United States*, 340 U.S. 193, 71 S. Ct. 209, 95 L. Ed. 207 (1950). Teespring has infringed the Desert Tactical Design no fewer than sixteen times since the entry of judgment. Furthermore, Maginnis has not satisfied one penny of the judgment against him up to this point. The judgment in this case is no longer equitable.

This Court has discretion to grant relief from the judgment as entered and incorporate additional campaigns offering the Maginnis Design for sale on the Teespring platform into this action. Furthermore, infringements of the Desert Tactical Design occurring after August 31, 2015 are subject to statutory damages pursuant to 17 U.S.C. §504(1)(2), to the extent that Puetz has evidenced Teespring's uncontrolled and unrelenting commercial misappropriation of the Desert Tactical Design.

### A. The Judgment is No Longer Equitable and Warrants Relief.

Puetz further seeks relief pursuant to Fed. R. Civ. P. 60(b)(5) to the extent that the earlier judgment has been satisfied but is no longer equitable. *Agostini v. Felton*, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Rule 60(b)(5) creates an exception to the doctrine of claim preclusion in that:

> "[Rule 60(b)(5)] provides a means on which a party can ask a court to modify or vacate a judgment or order if `a significant change either in factual conditions or in law' renders continued enforcement `detrimental to the public interest.'"

*Horne v. Flores,* 557 U.S. 433, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, ... but once a party carries this burden, a court abuses its discretion `when it refuses to modify an injunction or consent decree in light of such changes.'" *Horne*, 557 U.S. at 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

### B. The Standard Set Forth in *Rufo*.

A party invoking Rule 60(b)(5) must satisfy a two-prong standard set forth in *Rufo*; 1) the moving party must satisfy an initial burden of showing a significant change either in factual conditions or in the law warranting modification of the judgment; and, 2) the proposed modification [must be] suitably tailored to resolve the problems created by the changed factual or

legal conditions. *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo* at 384) (internal quotes omitted). The power to effect such doctrine lies "inherent in the jurisdiction of the chancery." (quoting *Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1255 (9th Cir.1999)).

        **1.**        **Puetz Meets his Burden of New Facts Under the First Prong of *Rufo*.**

Puetz satisfies the first prong of *Rufo* to the extent that the "new facts" in this case are that Teespring has permissively allowed new and unique users to upload the Maginnis Design, and strikingly similar versions thereof, infringing upon the Desert Tactical Design. Teespring in undeterred by the judgment in the California Action and has actually *increased* the frequency of infringing activity on the Teespring platform since entry of judgment. Puetz was under the impression that once the case was properly adjudicated and a jury verdict concluded that Teespring was in fact vicariously infringing upon the Desert Tactical copyright, that such infringements on the Teespring platform would discontinue all together or in the least, become more of a rare occurrence. Teespring has acted in the contrary.

Puetz became aware of additional new facts during the Nevada Action where the users in the contested campaigns were vaguely identified or not identified at all by Teespring in its initial disclosures. [Puetz Decl. Exh. 8]. Teespring is deceptive and ambiguous in identification of several of the users as "user associated with the accused design", most with omitted or fraudulent addresses. When Puetz questioned Teespring's counsel regarding this ambiguity, Ms. Gray's response was to the effect that Teespring does not verify user identities, addresses, and other pertinent information. Furthermore, Teespring does not even verify such user's identities before payments are made for successful campaign sales. Teespring is literally electronically transferring money to unknown parties, in unknown countries, for selling apparel emblazoned with copyright infringing designs on the Teespring platform. This leads Puetz to question if Teespring operates legitimately on any level whatsoever. Even Puetz's small website (deserttactical.com) logged customer IP addresses, verified credit card information, required security codes, and verified that such information matched the address given during the ordering process.

Teespring provides its users with all the necessary ingredients for a fruitful copyright infringement in that: 1) Teespring does not screen or scrutinize images uploaded to the Teespring platform prior to being offered for sale; 2) Teespring will not verify your identity or banking information; 3) Teespring will not ban you from using the Teespring platform even after repeated third-party intellectual property complaints and litigation (Maginnis to this day is still a Teespring user); and, 4) Teespring will still pay you, even if third-party intellectual property complaints are valid and result in unfavorable litigation for Teespring. For Teespring and the user it's a win-win partnership that leaves intellectual property owners to bear the burden of holding Teespring accountable, and if you're a small business, be prepared to meet Teespring's extensive and coercive legal team standing by to oppress your legal rights and claims.

### 2. Puetz Meets his Burden of Onerous, Unworkable, and Detrimental to the Public Interest Under the Second Prong of *Rufo*.

The second prong of *Rufo* Puetz must "show that the changed conditions make compliance with the [judgment] 'more onerous,' 'unworkable,' or 'detrimental to the public interest'." *Asarco*, 430 F.3d at 979 (quoting *Rufo*, 502 U.S. at 384). Denial of Puetz's request for permanent injunction has fueled Teespring's infringement fire. After nearly a year, Teespring has offered the Maginnis Design and substantially similar versions thereof, no less than sixteen times. Puetz must bear the onerous tasks of documenting, contacting Teespring, submitting notifications, and eventually a second litigation was necessary. Relief from judgment under the second prong is in the public interest because it will serve to terminate Teespring's unabated infringements of the Desert Tactical Design. Bringing Teespring back before this Court is the most expeditious way to constrain Teespring into compliance with federal law.

Even this Court appeared convinced by Teespring's false assertions that it intended to enhance its content "filtering system" and not intentionally further infringe upon the Desert Tactical Design. The events that have transpired during the last eleven months contradict that entirely. It's not contemporaneous for Teespring to claim it's not intentionally infringing upon the Desert Tactical Design while simultaneously emblazoning apparel with the Maginnis Design, offering it for sale, packaging, billing and shipping customer orders, and paying the users the

1  money due for their participation. The evidence of Teespring's unrelenting infringement of the
2  Desert Tactical Design coupled with a second litigation and a motion for this Court to grant
3  necessary relief, repudiate the entirety of Teespring's claims.
4  　　　　Absent injunctive or alternative equitable relief, Teespring will continue creating an undue
5  and onerous burden on Puetz by essentially forcing Puetz to devote an incredible amount of time
6  and financial resources to derail Teespring's inexorably infringements upon the Desert Tactical
7  Design. At no time has Teespring ever proposed a constructive solution to Puetz in an effort to
8  desist such infringements and Teespring's interminable infringements are unlikely to discontinue
9  absent firm intervention by this Court.
10  　　　　Teespring, if it remains unrestrained by this Court, will indefinitely continue the status quo
11  infringement of the Desert Tactical Design and other third-party intellectual property owners.
12  Teespring has abundantly proven that being sued for copyright infringement is not in itself a
13  deterrent from continuing such infringing activity. Moreover, the Courts uphold the standard that
14  protecting copyright holders is in the public interest. [I]t is virtually axiomatic that the public
15  interest can only be served by upholding copyright protections and correspondingly, preventing
16  the misappropriation of skills, creative energies, and resources which are invested in the protected
17  work." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 966 (C.D. Cal. 2016);
18  *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011) (citing *Apple
19  Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)).
20
21  **V.    CONCLUSION**
22  　　　　Granting Puetz's motion will not compromise the jury's verdict in this litigation, it merely
23  seeks to hold Teespring accountable to Puetz for the blatant disregard of the United States
24  copyright laws, the jury's verdict, as well as the judgement entered in favor of Puetz by this
25  Court. Teespring's continued infringement of the Desert Tactical Design has rendered the
26  judgment no longer equitable and this Court should hold Teespring to account to Puetz for the
27  additional infringements after entry of judgment. Furthermore, this Court should recommend
28

1  criminal charges be brought forth against Teespring, Inc., its owners, officers, and all others in
2  concert and privity pursuant to 17 U.S.C. §506(a)(1)(C) and 18 U.S.C. §2319(d).
3        For this and all the aforementioned reasons, Puetz respectfully requests this Court set
4  aside the judgment as entered in this action and hold Teespring accountable for the further
5  infringements of the Desert tactical Design.

7  DATED: May 18, 2018

/s/ Bradley J. Puetz
Bradley J. Puetz
Desert Tactical
10410 Apples Eye St.
Las Vegas, NV 89131
(702) 701-2878
Dtac13@gmail.com
Defendant Pro Se